IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DERRICK LAKEITH BROWN,              :
                                    :
          Plaintiff                 :
                                    :
     v.                             :      CIVIL NO. 3:CV-10-293
                                    :
MATT RODARMEL, ET AL.,              :      (Judge Conaboy)
                                    :
          Defendants                :

_____

**MEMORANDUM**
**Background**

     Derrick Lakeith Brown (Plaintiff), an inmate presently

confined at the United States Penitentiary, Lewisburg, Pennsylvania

(USP-Lewisburg), filed the above captioned pro se civil rights

action.  Named as Original Defendants are thirty-four (34) USP-

Lewisburg employees, one USP-Lewisburg inmate, and four (4)

officials of the Federal Bureau of Prisons (BOP).

     The Original Complaint alleges that prison officials

retaliated against Plaintiff for his initiation of civil rights

actions and administrative grievances by failing to protect him

from being assaulted by another inmate.  Brown next claims that

Defendants denied him adequate medical care, threatened to place

him in ambulatory restraints, ignored his requests to be

transferred or placed in protective custody, and subjected him to

excessive force.

     On August 25, 2010, Plaintiff initiated a second civil rights

action with this Court, Brown v. Hepner, et al., Civil Action No.

3:CV-10-1785.  Named as Defendants therein were approximately

1

twenty-seven (27) USP-Lewisburg employees and three (3) BOP officials.[1]  Brown similarly asserted that Defendants subjected him to retaliation, failed to provide him with needed medical care, failed to protect him from attacks from other prisoners, and ignored his requests for protective custody placement or transfer. He added that correctional officials subjected him to excessive force by placing him in ambulatory restraints on two separate occasions.  By Order dated August 27, 2010, this Court consolidated Plaintiff's second action into this matter.  See Doc. 38.

On December 2, 2010, Plaintiff initiated a third civil rights action with this Court, Brown v. Edinger, et al., Civil Action No. 3:CV-10-2471.  Named as Defendants in that action were approximately forty (40) USP-Lewisburg employees and three (3) BOP officials.[2]  In that action, Plaintiff again contends that prison officials retaliated against him for his initiation of civil rights actions and administrative grievances by failing to protect him from being assaulted by other inmates.  Brown next claims that Defendants denied him adequate medical care, threatened to place him in ambulatory restraints, ignored his requests to be transferred or placed in protective custody, and subjected him to

---

[1].  Eleven (11) of those Defendants were also named as Defendants in Brown's Original Complaint.

[2]  Approximately fifteen of the Defendants listed in Plaintiff's third action were also named in the Original Complaint. Twenty-five (25) of the Defendants (including seven John Doe officials) were also named as Defendants in the previously consolidated complaint.

excessive force by placing him in ambulatory restraints on three

(3) separate occasions.  By Order dated December 9, 2010, that

complaint was likewise consolidated into this matter.  <u>See</u> Doc. 55.

Presently pending is Defendants' motion to dismiss or in the

alternative for summary judgment.  <u>See</u> Doc. 88.  The motion is ripe

for consideration.

## Discussion

**Motion to Dismiss**

Defendants' pending dispositive motion is supported by

evidentiary materials outside the pleadings.  Federal Rule of Civil

Procedure 12(d) provides in part as follows:

> If, on a motion under Rule 12(b)(6) or 12(c),
> matters outside the pleading are presented to
> and not excluded by the court, the motion must
> be treated as one for summary judgment under
> Rule 56. All parties must be given reasonable
> opportunity to present all the material that is
> pertinent to the motion.

Fed. R. Civ. P. 12(b)(d).

This Court will not exclude the evidentiary materials

accompanying the Defendants' motion.  Thus, their motion will be

treated as solely seeking summary judgment.  <u>See</u> <u>Latham v. United

States</u>, 306 Fed. Appx. 716, 718 (3d Cir. 2009)(when a motion to

dismiss has been framed alternatively as a motion for summary

judgment such as in the present case, the alternative filing "is

sufficient to place the parties on notice that summary judgment

might be entered.")

**Summary Judgment**

Defendants assert that they are entitled to entry of summary judgment on the grounds that: (1) <u>respondeat</u> <u>superior</u> cannot form the basis for claims against Defendants Lappin, Dodrill, and Norwood; (2) a viable conspiracy claim has not been stated; (3) the claims asserted against fourteen (14) Defendants regarding the alleged January 3, 2010 assault should be dismissed for lack of personal involvement; (4) Plaintiff's claims relating to incidents which transpired on June 27, 2010, August 12, 2010, and September 16, 2010, are barred by the favorable termination rule; (5) Brown has no constitutionally protected right to a grievance procedure; (6) the claims of retaliation are meritless; (7) Brown fails to establish a viable Eighth Amendment claim with respect to his medical treatment; (8) an actionable excessive force claim has not been stated; (9) Plaintiff's allegations regarding being housed in a cold cell are insufficient; and (10) Defendants are entitled to qualified immunity.

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>See also</u> <u>Saldana v. Kmart Corp.</u>, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. <u>Anderson v. Liberty</u>

Lobby, Inc., 477 U.S. 242, 248 (1986).  A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party.  Id. at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  Celotex, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the

evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Respondeat Superior**

Among the many Defendants named by Plaintiff are the following officials of the Federal Bureau of Prisons (BOP): retired Director Harley Lappin, former Northeast Director D. Scott Dodrill and former Northeast Regional Director J. L. Norwood. See Doc. 1, p. 3.

Defendants' first argument generally maintains that there are no allegations that Defendants Lappin, Dodrill, and Norwood had any personal involvement in the alleged constitutional misconduct and any attempt by Plaintiff to establish liability against those officials solely based upon their supervisory capacities must fail. See Doc. 93, p. 29.

Civil rights claims brought cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence,

6

> however, must be made with appropriate
> particularity.

Rode, 845 F.2d at 1207.

It is undisputed that Defendants Lappin, Dodrill and Norwood were each employed in supervisory capacities by the BOP. A review of the record establishes that none of those three officials were involved in the day to day operations of USP-Lewisburg. Pursuant to the standards announced in Rode, entry of summary judgment in favor of Defendants Lappin, Dodrill, and Norwood is appropriate with respect to any attempt by Plaintiff to establish liability against those three (3) Defendants based upon their supervisory roles within the BOP.

## Conspiracy

Brown describes himself as being a "mental patient." Doc. 1, p. 5. He alleges that Defendants have engaged in a wide ranging conspiracy for the purpose of subjecting him to retaliation for his prior pursuit of civil rights complaints and administrative grievances. This purported retaliatory mistreatment has included attempts by the conspirators to have Brown murdered, assaulted by other prisoners, and denied needed medical care.

In order to set forth a cognizable conspiracy claim, a plaintiff cannot rely on broad or conclusory allegations. D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch., 972 F.2d 1364, 1377 (3d Cir. 1992), cert. denied, 506 U.S. 1079 (1993); Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989); Durre v. Dempsey, 869 F.2d 543, 545 (10th Cir. 1989). The Third Circuit Court of Appeals

has further noted that "[a] conspiracy claim must . . . contain supportive factual allegations." <u>Rose</u>, 871 F.2d at 366. Moreover, "[t]o plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." <u>Shearin v. E.F. Hutton Group, Inc.</u>, 885 F.2d 1162, 1166 (3d Cir. 1989).

The essence of a conspiracy is an agreement or concerted action between individuals. <u>See</u> <u>D.R. by L.R.</u>, 972 F.2d at 1377; <u>Durre</u>, 869 F.2d at 545. Consequently, a plaintiff must allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a protected federal right. <u>Id.</u>; <u>Rose</u>, 871 F.2d at 366; <u>Young</u>, 926 F.2d at 1405 n.16; <u>Chicarelli v. Plymouth Garden Apartments</u>, 551 F. Supp. 532, 539 (E.D. Pa. 1982). Where a civil rights conspiracy is alleged, there must be some specific facts in the complaint which tend to show a meeting of the minds and some type of concerted activity. <u>Deck v. Leftridge</u>, 771 F.2d 1168, 1170 (8th Cir. 1985). A plaintiff cannot rely on subjective suspicions and unsupported speculation. <u>Young v. Kann</u>, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991).

Based upon a careful review of the Consolidated Complaints and the undisputed record, it is clear that Plaintiff has failed to state a viable conspiracy claim against any Defendant. As

correctly noted by Defendants, Brown has not alleged any facts

showing any communication or cooperation among any Defendants from

which an agreement could be inferred.

Plaintiff's theory that a multitude of federal correctional

officials including the Director of the BOP and the Warden of USP-

Lewisburg, as well as multiple additional USP-Lewisburg and BOP

staff engaged in a wide ranging conspiracy for the ultimate purpose

of having him killed appears to be a delusional scenario[3] created

by Brown, an individual with admitted mental health problems and a

history of filing frivolous lawsuits and appeals.[4]  There are

---

[3]  For instance, Plaintiff asserts that his cellmate, Tyrone
Wallace who allegedly assaulted him on January 3, 2010, was an
undercover federal officer/confidential informant.  See Doc. 1, ¶
III (B).
    Wallace is also named as a Defendant.  Since there is no
plausible factual assertion that Inmate Wallace was acting under
color of law, sua sponte dismissal will be entered in his favor.

[4]  Brown, while incarcerated, previously initiated multiple
civil actions which were dismissed as frivolous by the United
States District Court for the Western District of Tennessee: Brown
v. Memphis Police, No. 2:01-2868 (Nov. 13, 2001)(sua sponte
dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii)); Brown v.
Shelby County, et al., No. 2:02-2365 (June 19, 2002)(dismissal on
grounds that § 1983 complaint is frivolous).
    Since arriving at USP-Lewisburg, Brown has filed numerous
civil rights and habeas corpus actions in this district court,
which were dismissed upon initial screening.  See Brown v. Lappin,
3:CV-09-1732, (M.D. Pa. Nov. 10, 2009)(Vanaskie, J.)(dismissal
under 28 U.S.C. § 1915(g)); Brown v. Bledsoe, et al., Civil No.
3:CV-09-1742, (M.D. Pa. Nov. 17, 2009)(Vanaskie, J.); and Brown v.
Bledsoe, et al., Civil No. 3:CV-09-1436, (M.D. Pa. Nov. 10,
2009)(Vanaskie, J.).
    Moreover, during the course of this action alone, Plaintiff
has filed countless meritless motions as well as five (5)
unsuccessful appeals with the United States Court of Appeals for
the Third Circuit.

simply no averments of fact in the Consolidated Complaints that reasonably suggest the presence of an agreement or concerted activity between any Defendants to either murder or injure the Plaintiff or to otherwise violate his civil rights. Summary judgment will be granted in favor of the Defendants with respect to Brown's wholly conclusory and speculative claims of conspiracy.

**Personal Involvement**

Plaintiff alleges that he was attacked without provocation by his cell mate Tyrone Wallace on January 3, 2010. The Original Complaint asserts that Defendants Lesho, Diltz, Tharp, Hoffmaster, Wagner, Harvey, Shurman, Whitaker, Sassaman, Hepner Benfer, Prince, and Hartzel responded to that incident. Defendants' summary judgment motion generally argues that since there is no assertion that any of those fourteen (14) Defendants violated any of Brown's constitutional protections they are entitled to entry of summary judgment on the basis of lack of personal involvement. See Doc. 93, p. 18.

A plaintiff, in order to state an actionable civil rights claim, must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Groman v. Township of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995); Shaw by Strain v. Strackhouse, 920 F.2d 1135, 1141-42 (3d Cir. 1990).

A review of the Original Complaint provides that Plaintiff states that the above listed fourteen (14) Defendants responded to the attack by Inmate Wallace. It is alleged that after unsuccessfully attempting to verbally order Inmate Wallace to cease his assault, correctional officers dispersed chemical agents which were allegedly intentionally directed at Brown despite the fact that he was the victim. Given the liberal standards afforded to pro se pleadings, Plaintiff has arguably set forth a claim that those Defendants subjected him to an excessive use of force.

It is also asserted that one of the fourteen Defendants, Nurse Prince, was deliberately indifferent to Plaintiff's resulting injuries. Based upon the nature of those factual assertions, the request for summary judgment on the basis of lack of personal involvement will be denied. However, the sufficiency of Brown's allegations of excessive force and medical deliberate indifference will be addressed below.

**Favorable Termination**

One of Plaintiff's Consolidated Complaints (Civil Action No. 3:CV-10-1785) seeks relief regarding a June 27, 2010 incident during which Plaintiff contends that he was subjected to retaliation which regarded his refusal to accept a cellmate and eventually resulted in Brown's placement in ambulatory restraints.

The other Consolidated Complaint (Civil Action No. 3:CV-10-2471) seeks relief regarding similar alleged retaliatory incidents which also involved refusals to accept cellmates and ambulatory

11

restraints which transpired on August 12, 2010, and September 6, 2010.

Defendants note that as a result of those three (3) incidents, Brown was issued institutional disciplinary charges.  <u>See</u> Doc. 93-3, Exhibit 1.  The Defendants contend that since the ensuing misconduct hearings resulted in the loss of good conduct time until the results of those proceedings have been invalidated or overturned via a grant of federal habeas corpus relief, his claims for monetary damages with respect to his allegations relating to those three incidents are barred under <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994).  <u>See</u> Doc. 93, p. 15.

Inmates challenging the duration of their confinement or seeking earlier or speedier release must assert such claims in a properly filed habeas corpus petition.  <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1975).  The United States Supreme Court in <u>Edwards v. Balisok</u>, 520 U.S. 641, 646 (1997), concluded that a civil rights claim for declaratory relief "based on allegations ... that necessarily imply the invalidity of the punishment imposed, is not cognizable" in a civil rights action.  <u>Id.</u> at 646.  It is undisputed that Plaintiff was issued misconduct charges as a result of the incidents which occurred on June 27, 2010, August 12, 2010, and September 6, 2010.  Following institutional disciplinary hearings, Brown was found guilty of those charges and received sanctions which included losses of good conduct time.

In <u>Heck</u>, the Supreme Court ruled that a constitutional cause

of action for damages does not accrue "for allegedly
unconstitutional conviction or imprisonment, or for other harm
caused by actions whose unlawfulness would render a conviction or
sentence invalid," until the Plaintiff proves that the "conviction
or sentence has been reversed on direct appeal, expunged by
executive order, declared invalid by a state tribunal authorized to
make such determination, or called into question by a federal
court's issuance of a writ of habeas corpus." Id. at 486-87.
The Third Circuit Court of appeals has found that Heck applies to
challenges to parole decisions. See Aldoff v. Fisher, No. 00-2914,
slip op. (3d Cir. June 28, 2001). Heck has also been deemed
applicable to a claim that a sentence was improperly increased by
correctional officials. See Sharp v. Lavan, No. 02-4535, slip op.
(3d Cir. June 19, 2003).

    Plaintiff's claims relating to incidents which occurred on
June 27, 2010, August 12, 2010, and September 6, 2010, and led to
the filing of institutional disciplinary charges which resulted in
losses of good time credits clearly attack the length of his
federal sentence. This Court recognizes that there are
circumstances where consideration of excessive force claims would
not implicate Heck. However, accepting the Plaintiff's version of
the facts with respect to the June 27, 2010, August 12, 2010, and
September 6, 2010, events would require findings by this Court that
Brown was subjected to retaliation on those dates and should not be
held responsible for the actions underlying the misconduct charges

and ergo that there was no legitimate purpose behind the decisions to employ ambulatory restraints. Consequently, disposition of Brown's pending excessive force allegations could call into question the lawfulness of the misconduct charges and resulting disciplinary proceedings. Therefore, they are clearly precluded under Heck in that the claims must be initially raised via a properly filed habeas corpus petition. If the misconduct charges are rendered invalid in a habeas corpus proceeding, Plaintiff may then seek monetary damages via a civil rights action.

In conclusion, in accordance with the mandates of Heck, summary judgment will be granted with respect to Plaintiff's allegations relating to the incidents of June 27, 2010, August 12, 2010, and September 6, 2010.

**Grievance Procedure**

The Consolidated Complaints assert claims against several Defendants, notably DOC Defendants, Lappin, Dodrill, Norwood and Watts as well as Administrative Remedy Coordinator Finley, Warden Bledsoe, and Associate Wardens Rear and Maiorana of USP-Lewisburg which are premised on their handling and failure to favorably respond to his administrative grievances and complaints. Defendants claim entitlement to entry of summary judgment on the basis that prisoners have no constitutionally protected right to a grievance procedure. See Doc. 93, p. 24.

Prisoners have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor

14

Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring)

("I do not suggest that the [grievance] procedures are

constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL

2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259

F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison

grievance procedure confers no liberty interest on a prisoner.")

     While prisoners do have a constitutional right to seek redress

of their grievances from the government, that right is the right of

access to the courts which is not compromised by the failure of

prison officials to address an inmate's grievance.  See Flick v.

Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance

regulations providing for administrative remedy procedure do not

create liberty interest in access to that procedure).

     Pursuant to those decisions, any attempt by Plaintiff to

establish liability against any Defendant based upon their handling

of his administrative grievances or complaints does not support a

constitutional claim.  See also Alexander v. Gennarini, 144 Fed.

Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident

grievance process not a basis for § 1983 liability); Pryor-El v.

Kelly, 892 F. Supp. 261, 275 (D.D.C. 1995) (because prison

grievance procedure does not confer any substantive constitutional

rights upon prison inmates, the prison officials' failure to comply

with grievance procedure is not actionable).  Summary judgment will

be granted in favor of the Defendants with respect to all claims

premised on the handling and/or failure to favorably respond to

15

administrative grievances, complaints, and appeals.

**Retaliation**

Plaintiff asserts that he was subjected to retaliation by Defendants "due to filing civil rights complaints and administrative remedies against them." Doc. 1, ¶ IV(1). Defendants contend that Plaintiff's claims of retaliation are meritless. <u>See</u> Doc. 93, p. 25.

To establish a viable retaliation claim, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity.[5] <u>Rauser v. Horn</u>, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." (<u>Id.</u>)(quoting <u>Allah v. Seiverling</u>, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." (<u>Id.</u>)(quoting <u>Suppon v. Dadonna</u>, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." <u>Rauser</u>, 241 F.3d at 333-34 (quoting <u>Mount Healthy Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977)).

Once Plaintiff has made a <u>prima facie</u> case, the burden shifts to Defendants to prove by a preponderance of the evidence that they

---

[5] Defendants concede that an inmate's right of access to the courts is a constitutionally protected activity. <u>See</u> <u>id.</u>

16

"would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

As noted in Allah, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied. Thus, the relevant inquiry is not whether the alleged retaliatory conduct was unconstitutional. On the contrary, Plaintiff only needs to establish that he was subjected to adverse action in retaliation for his engagement in constitutionally protected conduct.

Plaintiff asserts that the alleged retaliatory conduct was undertaken for his pursuit of legal actions, including prior federal civil rights actions. As conceded by Defendants, the filing of a lawsuit is protected activity under the First Amendment right of prisoners to petition the court. Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981). Thus, the first prong of Rauser, i.e., that the plaintiff be engaged in a constitutionally protected activity, has been satisfied.

With respect to the second prong of Rauser, as Plaintiff has

continued to file numerous lawsuits, motions, petitions, and
appeals in federal court, the record and Plaintiff's litigation
history do not support a finding that the alleged retaliatory
actions deterred Brown from exercising his constitutionally
protected conduct.

Finally in regard to the third prong of <u>Rauser</u>, the mere fact
that an adverse action occurs after either a complaint or grievance
is filed is relevant, but not dispositive, for the purpose of
establishing a causal link between the two events.[6] <u>See</u> <u>Lape v.</u>
<u>Pennsylvania</u>, 157 Fed. Appx. 491, 498 (3d Cir. 2005). In the
present case, Plaintiff has not presented any credible evidence to
support a reasonable inference that his initiation of lawsuits and
grievances was a substantial or motivating factor underlying the
purported subsequent actions taken by Defendants. As previously
noted by this Court, the majority of the actions filed by Plaintiff
since his arrival at USP-Lewisburg were dismissed upon initial
screening and as such were never even served on any USP-Lewisburg
officials. Second, with respect to the events of January 3, 2010,
Plaintiff's contention that his cell mate was an undercover federal
agent assigned to subject him to retaliation is simply
preposterous. Moreover, it is undisputed that the conduct of
correctional staff on that date was an effort to cease an ongoing

_____

[6] Only where the facts of a particular case are "unusually
suggestive" of a retaliatory motive will temporal proximity,
standing alone, support an inference of causation. <u>Krouse v.</u>
<u>American Sterlizer Co.</u>, 126 F.3d 494, 503 (3d Cir. 1997).

assault on the Plaintiff.

With respect to the additional incidents cited by Brown, he admits that he has mental health issues and has had multiple confrontations with both correctional staff and other prisoners resulting from his belief that he is being placed into cells with inmate assassins working on behalf of the federal government, situations which have ended at times with his placement in ambulatory restraints. Based upon Plaintiff's own descriptions of the underlying purported retaliatory events and recognizing that when analyzing a retaliation claim it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly when dealing with volatile situations concerning prison security, Brown has not presented any rational evidence to support a reasonable inference that his initiation of lawsuits and grievances was a substantial or motivating factor underlying the actions taken by Defendants.

This is simply not a case where the facts are unusually suggestive of a retaliatory motive as contemplated in Krouse. Rather, the Plaintiff's speculative, at times delusional, assertions sadly demonstrate the problems associated with the incarceration of inmates with obvious mental health issues.[7]

---

[7] Motions filed by Brown earlier in these proceedings requesting that he be afforded single cell status or placed in protective custody on the grounds that prison officials "are conspiring to have him attacked, stabbed, and killed via federal
(continued...)

In conclusion, Plaintiff has not alleged sufficient facts to establish a retaliatory motive by any correctional official. It is apparent that a rational trier of fact could not conclude that Defendants engaged in any retaliatory conduct. Thus, Brown's wholly speculative retaliation claims fail to satisfy the requirements of Rauser and warrant entry of summary judgment.

**Excessive Force**

Plaintiff alleges that he was assaulted by his cellmate Tyrone Wallace. In response to that attack, correctional staff used chemical spray and then shot "several chemical balls at us." Doc. 1, p. 5. Brown contends that despite the fact that he was the victim he was deliberately and intentionally sprayed with the chemical agents.

With respect to Brown's claim that he was intentionally exposed to chemical agents, Defendants contend that said allegation does not rise to the level of cruel and unusual punishment. See Doc. 93, p. 18.

A correctional officer's use of force must involve the "unnecessary and wanton infliction of pain" in order to constitute cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986). "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize[s] that conduct prohibited by the

---

[7](...continued)
informant prisoners who secretly work for the federal government and prison administration" demonstrate the Plaintiff's delusional thought process. Doc. 11, p. 1.

Cruel and Unusual Punishment Clause, whether the conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id.

In a later ruling, the United States Supreme Court recognized that the use of force may constitute cruel and unusual punishment even if the prisoner does not sustain "significant" injuries. Hudson v. McMillian, 503 U.S. 1, 9 (1992). The core judicial inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically to cause harm." Fuentes v. Wagner, 206 F.3d 335, 345 (3d Cir.), cert. denied, 531 U.S. 821(2000); Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000)(even a de minimis use of force, if repugnant to the conscience of mankind, may be constitutionally significant). As explained in Fuentes:

> Resolution of an Eighth Amendment claim therefore "mandate[s] an inquiry into a prison official's state of mind." Wilson v. Seiter, 501 U.S. 294, 299 . . . (1991). Two considerations define that inquiry. We must first determine if the deprivation was sufficiently serious to fall within the Eighth Amendment's zone of protections. Id. at 298. . . . If not, our inquiry is at an end. However, if the deprivation is sufficiently serious, we must determine if the officials acted with a sufficiently culpable state of mind. Id. In other words, we must determine if they were motivated by a desire to inflict unnecessary and wanton pain. "What is necessary to establish an 'unnecessary and wanton infliction of pain . . .' varies according to the nature of the alleged constitutional violation." Hudson v. McMillan, 503 U.S. 1, 5 . . . (1992).

206 F.3d at 344.

It is apparent to this Court that based upon an application of the factors announced in <u>Brooks</u> and <u>Whitley</u> to the undisputed record, the actions taken by Defendants were not an intentional sadistic attempt to inflict harm on Plaintiff but rather a good faith effort to diffuse a dangerous situation. <u>See</u> <u>Wilson v. Horn</u>, 971 F. Supp. 943, 948 (E.D. Pa. 1997)(a plaintiff must establish that the force was applied maliciously and sadistically, instead of in good faith). There has simply been no competent evidence presented which could show that the force exercised was disproportionate. On the contrary, Plaintiff acknowledges that the chemical agents were only employed in an effort to halt an assault being waged against him by his cell mate and only after Brown's assailant refused verbal orders to cease his attack.[8] There are also no facts presented which could support that excessive measures were employed by any Defendant.

Given those undisputed facts showing that the employment of chemical agents was reasonable under the circumstances, the request for entry of summary judgment on the basis that a viable excessive force claim has not been set forth will be granted.

**Medical Treatment**

Based upon a review of the Consolidated Complaints as well as

---

[8] Plaintiff also admits that he was treated for exposure to the chemical agents by a prison nurse immediately after being removed from his cell.

Defendants' submissions, Plaintiff suffered various injuries including exposure to chemical agents, lacerations, abrasions, a blow to the head, a loose tooth, and four stab wounds to his legs as a result of the attack by Inmate Wallace. There are also claims that Plaintiff developed bruises, swelling, and abrasions from being placed in ambulatory restraints.

Defendants argue that Plaintiff "has failed to establish an Eighth Amendment violation with regard to medical care." Doc. 93, p. 24. In support of their argument they have submitted relevant copies of Brown's institutional records including photographs taken of Plaintiff after he was attacked by Inmate Wallace. See Doc. 93-3.[9]

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need. See Spruill v. Gillis, 372 F.3d 218, 235-36 (3d Cir. 2004); Natale v. Camden Cty. Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the

---

[9] According to the institutional records and photographs provided by Defendants, Wallace also suffered minor injuries.

plaintiff's serious medical needs (the objective component). Monmouth Cty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 346 (3d Cir. 1987); West v. Keve, 571 F.2d 158, 161 (3d Cir. 1979).

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Mines v. Levi, 2009 WL 839011 *7 (E.D. Pa. March 26, 2009)(quoting Colburn, 946 F.2d at 1023); Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347. "[I]f unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment." Young v. Kazmerski, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting Monmouth Cty. Corr. Inst. Inmates, 834 F.2d at 347).

With respect to the serious medical need requirement, it has been recognized by the Court of Appeals for the Third Circuit that cuts requiring no more than small bandages do not constitute serious medical needs covered by the Eighth Amendment. See Stankowski v. Farley, 251 Fed. Appx. 743, 748 (3d Cir. 2007). Based upon those factors, cut or cuts to the inside of Plaintiff's mouth and a bruise from hitting the floor did not constitute an obvious serious medical need as required under Estelle and Monmouth Co.

The injuries allegedly suffered by Plaintiff due to being placed in ambulatory restraints were not of such magnitude as to

24

satisfy the serious medical need requirement.[10]  <u>See</u> <u>Wesson v.</u>
<u>Igelsby</u>, 910 F. 2d 278, 284 (5th Cir. 1990)(swollen wrists not a
serious medical need); <u>Price v. Engert</u>, 589 F. Supp.2d 240, 246
(W.D.N.Y. 2008)(wrist and hand injuries do not satisfy the serious
medical need requirement).

Brown also claims that he suffered a loosened tooth, stab
wounds, exposure to chemicals, as well as head and back pain due to
the assault by Inmate Wallace.  The institutional records submitted
by Defendants establish that the stab wounds were so minor that
Plaintiff did not even notice them after the attack.  Second, the
stab wounds were subsequently examined and described as being three
(3) shallow lacerations to the lower right leg and one (1) shallow
laceration to the lower left leg which were not infected and
already in various stages of healing when Brown initially reported
them three days after the attack.  Under the standards set forth in
<u>Stankowski</u>, those minor cuts do not constitute a serious medical
need.

Second, the submitted records and photographs of Plaintiff's
remaining minor injuries clearly establish that they did not
require any medical or dental treatment, or result in any type of
permanent harm.  Moreover, Plaintiff has not come forth with any
facts which could establish that his alleged head, shoulder and

---

[10]  It is noted that when placed in restraints, Plaintiff was
examined by a member of the prison's medical staff who determined
that the prisoner had adequate circulation.

back pain constituted anything more then temporary discomfort.[11] Based upon the undisputed evidence submitted by Defendants, Plaintiff has not satisfied the serious medical need requirement of Estelle.

Assuming arguendo that the Consolidated Complaints did satisfy the serious medical need threshold, with respect to the subjective deliberate indifference component of Estelle, the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 841 (1994). A complaint that a physician "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106.

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993). It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation. See id. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a

---

[11] There is clearly no factual support for Plaintiff's bald claim of having suffered significant head and shoulder injuries.

constitutional claim may be presented. See id.; Ordonez v. Yost, 289 Fed. Appx. 553, 555 (3d Cir. 2008) ("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons").

Plaintiff acknowledges that following the attack by Inmate Wallace he was seen by medical staff and pictures were taken of his injuries. He also underwent a decontamination process due to his exposure to chemical agents. Institutional medical records further point out that Brown also refused a tetanus shot. Plaintiff also states he underwent an assessment by Paramedic L. Potter and that it was determined that no further treatment was required.

Likewise, the institutional medical records indicate that Plaintiff was provided with medical monitoring when placed in ambulatory restraints. Based upon a liberal consideration of Plaintiff's allegations, the subjective deliberate indifference component has also not been met.

**Cold Cell**

Plaintiff states after he was assaulted by his cellmate, he was transferred later that same day to a cell "which had the window open and freezing cold below temperature for nearly two hours." Doc. 1, p. 5. Brown acknowledges that after complaining about the cold temperature he was moved to another cell. See id.

A condition of confinement, in order to implicate the Eighth Amendment, must be so reprehensible as to be deemed inhumane under contemporary standards or one that deprives an inmate of minimal

civilized measure of the necessities of life.  See Hudson v.
McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S. 294,
298 (1991).  An Eighth Amendment claim against a prison official
must meet two requirements:  (1) "the deprivation alleged must be,
objectively, sufficiently serious;" and (2) the "prison official
must have a sufficiently culpable state of mind."[12]  Farmer v.
Brennan, 511 U.S. 825, 834 (1994).  In prison conditions cases,
"that state of mind is one of 'deliberate indifference' to inmate
health or safety."  Id.  In reviewing this type of claim the courts
have stressed that the totality of the circumstances are critical
to a finding of cruel and unusual punishment.

     As previously discussed, prison officials are required to
provide prisoners with the basic necessities of life, such as food,
clothing, shelter, sanitation, medical care and personal safety.
"Prison conditions may amount to cruel and unusual punishment if
they cause 'unquestioned and serious deprivations of basic human
needs ... [that] deprive inmates of the minimal civilized measure
of life's necessities.'"  Tillman v. Lebanon County Correctional
Facility, 221 F.3d 410, 417-18 (3d Cir. 2000) (quoting Rhodes v.
Chapman, 452 U.S. 337, 347 (1981)).

---

     [12]  Under Farmer, deliberate indifference is a subjective
standard in that the prison official must actually have known or
been aware of the excessive risk to inmate safety.  Beers-Capitol
v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001).  This requirement of
actual knowledge means that "the official must both be aware of
facts from which the inference could be drawn that a substantial
risk of serious harm exists, and he must also draw the inference."
Farmer, 511 U.S. at 837.

Courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained in Wilson v. Seiter, 501 U.S. 294, 304-05 (1991):

> Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists.

In addition, the inmate must show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Id. at 298. A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 837. Critical factors which must be considered are the duration of the complainant's exposure to the alleged unconstitutional conditions and the totality of the circumstances.

Plaintiff acknowledges that he was only moved to a different cell because he had been attacked by his cellmate. Second, Brown

admits that he was only housed in a cold cell for two (2) hours. It is also undisputed that when Plaintiff complained about the cold temperature, he was moved to another cell in a timely fashion.

Based upon an application of the standards announced in <u>Farmer</u> and <u>Wilson</u> to the undisputed facts, the relatively brief two (2) hour incident of being housed in a cold cell was not of such magnitude as to set forth a viable claim under the Eighth Amendment. Summary judgment will be entered in favor of Defendants with respect to this conditions of confinement claim.

**Failure to Protect**

Plaintiff asserts that multiple Defendants refused his requests to be placed in protective custody and violated his right to be free from attacks by other inmates. The only prisoners actually identified by Plaintiff as posing a risk to his safety are Inmates Wallace and Anthony Ater both of whom are similarly described as being former cellmates, assassins, and informants who were working for the prison administration.

Defendants note that Wallace and Plaintiff became cellmates on July 27, 2009. <u>See</u> Doc. 94, ¶ 2. They remained cellmates without incident until the January 3, 2010, incident. They assert that Plaintiff's wholly speculative claims that Defendants engaged in a retaliatory conspiracy to have him assaulted and/or killed are meritless.

Prison officials violate an inmate's right to be free from cruel and unusual punishment when, through intentional conduct or

deliberate indifference, they subject the inmate to violence at the
hands of another prisoner.  Young v. Quinlan, 960 F.2d 351, 361 (3d
Cir. 1992); Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985).
Mere negligent conduct that leads to serious injury of a prisoner
by a prisoner does not expose a prison official to liability under
§ 1983.  Davidson v. Cannon, 474 U.S. 344, 347-48 (1986).  The
victim's custodian is exposed to civil rights liability only when
"he knows or should have known of a sufficiently serious danger to
[the] inmate."  Young, 960 F.2d at 361; see also Martin v. White,
742 F.2d 469, 474 (8th Cir. 1984); Mosby v. Mabry, 697 F.2d 213,
215 (8th Cir. 1982).

       The Third Circuit Court of Appeals has "stress[ed], however,
that in constitutional context 'should have known' is a phrase of
art with a meaning distinct from its usual meaning in the context
of the law of torts."  Young, 960 F.2d at 361.  As our Court of
Appeals explained the phrase, "does not refer to a failure to note
a risk that would be perceived with the use of ordinary prudence."
Colburn v. Upper Darby Township, 946 F.2d 1017, 1025 (3d Cir.
1991).  Instead, "[i]t connotes something more than a negligent
failure to appreciate the risk . . ., though something less than
subjective appreciation of that risk."  Id.  Moreover, "the risk of
. . . injury must be not only great, but also sufficiently apparent
that a lay custodian's failure to appreciate it evidences an
absence of any concern for the welfare of his or her charges."  Id.
Consequently, liability only attaches when there is a "pervasive

risk of harm to inmates from other prisoners,[13] . . . and that the prison officials have displayed 'deliberate indifference' to the danger." Riley, 777 F.2d at 147.

During the course of these proceedings, Plaintiff has made repeated accusations that various individuals are conspiring to have him killed. The list includes members of the Mason brotherhood, federal government, Mafia, USP-Lewisburg officials, and BOP staff. See generally Doc. 153, p. 3. Given these clearly delusional accusations and that Plaintiff has not presented the Court with any facts showing that prison officials were presented with credible information showing a need for Plaintiff to be placed in protective custody before the incident with Inmate Wallace, under the standards announced in Young and Riley, a viable failure to protect claim has not been stated.

**Conclusion**

Entry of summary judgment in favor of Defendants Lappin, Dodrill, and Norwood is granted with respect to any claims based upon their supervisory roles within the BOP. Second, summary judgment will be granted in favor of Defendants with respect to Brown's wholly conclusory and speculative claims of failure to protect, retaliation, and conspiracy.

Sua sponte dismissal in favor of Defendant Inmate Tyrone

---

13. The Court of Appeals for the Third Circuit has noted that "prison officials should, at a minimum, investigate each allegation of violence or threat of violence." Young, 960 F.2d at 363 n.23.

Wallace will be ordered since the prisoner was not acting under color of law as required in a federal civil rights action.

Summary judgment will be granted with respect to Plaintiff's allegations relating to excessive force; being housed in a cold cell; deliberate indifference to medical needs; and the incidents of January 3, 2010, June 27, 2010, August 12, 2010 and September 6, 2010. Summary judgment will also be granted in favor of the Defendants with respect to any claims relating to the handling and/or failure to favorably respond to administrative grievances and complaints. An appropriate Order will enter.[14]

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: MARCH 27 , 2013

---

[14] Based upon the Court's determinations herein, a discussion as to Defendants' qualified immunity argument is not warranted.